IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MARIO ROMERO,**

      **Plaintiff,**

      **vs.**                                                                      **Civ. No. 20-282 JFR**

**ANDREW SAUL, Commissioner
of SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 20) filed August 18, 2020, in support of Plaintiff Mario Romero's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Andrew Saul, Commissioner of the Social Security Administration ("Defendant" or "Commissioner") denying Plaintiff's claim for Title II disability insurance. On November 18, 2020, Plaintiff filed his Motion to Reverse and/or Remand. Doc. 25. The Commissioner filed a Response in opposition on January 19, 2021 (Doc. 27), and Plaintiff filed a Reply on March 2, 2021 (Doc. 30). The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

## I. Background and Procedural History

Plaintiff Mario Romero ("Mr. Romero") alleges that he became disabled on May 19, 2017, at the age of forty-two, because of multiple sclerosis ("MS"), pain, numbness, depression,

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. Doc. 17.

fatigue, headaches, temperature intolerance, limited range of motion, spasticity and vision problems. Tr. 235, 245. Mr. Romero completed high school in 1992. Tr. 246. Mr. Romero worked for seventeen years at New Mexico Tech in research and development as a test range leadman. Tr. 237-38, 247, 276-78. Mr. Romero stopped working due to his physical and mental impairments and because his employer refused to provide reasonable accommodations for his heat intolerance related to his MS. Tr. 246, 403.

On August 10, 2017, Mr. Romero filed an application for Social Security Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. Tr. 213-19. On March 15, 2018, Mr. Romero's application was denied. Tr. 89-106, 107, 131-34. It was denied again at reconsideration on June 28, 2018. Tr. 108-28, 129, 136-41. Upon Mr. Romero's request, Administrative Law Judge (ALJ) Michael Leppala held a hearing on May 14, 2019. Tr. 45-87. Mr. Romero appeared in person at the hearing with attorney representative Preston Flood.[2] *Id*. On August 6, 2019, ALJ Leppala issued an unfavorable decision. Tr. 24-39.

Subsequent to the ALJ's determination, Mr. Romero submitted additional treating physician opinion evidence to the Appeals Council. Tr. 2, 8-10, 11-15. The Appeals Council declined to consider the evidence, explaining that

> You submitted a medical source statement from Ravi Bhasker, M.D., dated September 24, 2019 (5 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.
>
> You also submitted records from Elaine Sue Edmonds, Pan American Neurology, dated February 4, 2020. The Administrative Law Judge decided your case through August 6, 2019. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before August 6, 2019.

---

[2] Mr. Romero is represented in these proceedings by Attorney Benjamin Decker. Doc. 1.

Tr. 2.  The Appeals Council did not exhibit any of the new evidence and on March 12, 2020, the Appeals Council issued its decision denying Mr. Romero's request for review and upholding the ALJ's final decision.  Tr. 1-7.  On March 30, 2020, Mr. Romero timely filed a Complaint seeking judicial review of the Commissioner's final decision.  Doc. 1.

## II.  Applicable Law

### A.  Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals).  The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3]  If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.

---

[3] Substantial work activity is work activity that involves doing significant physical or mental activities."  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  *Id*.  "Gainful work activity is work activity that you do for pay or profit."  20 C.F.R. §§ 404.1572(b), 416.972(b).

    (4)    If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

    (5)    If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5. The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

    **B.**    **Standard of Review**

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the

proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence "is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more

comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

### III. Analysis

The ALJ made his decision that Mr. Romero was not disabled at step five of the sequential evaluation. Tr. 37-39. Specifically, the ALJ found that Mr. Romero met the insured status requirements through December 31, 2022. Tr. 29. The ALJ found that Mr. Romero had not engaged in substantial gainful activity since his alleged onset date of May 19, 2017. *Id.* The ALJ determined that Mr. Romero had severe impairments of multiple sclerosis, degenerative arthritis, and post-traumatic stress disorder. *Id.* The ALJ determined that Mr. Romero did not have an impairment or combination of impairments that met or medically equaled the severity of a listing. Tr. 30-32. Proceeding to step four, the ALJ, after careful consideration of the record, found that Mr. Romero had the residual functional capacity to

> perform light work as defined by 20 CFR 404.1567(b) with the following additional limitations: The Claimant is capable of occasionally lifting and/or carrying twenty pounds, frequently lifting and/or carrying ten pounds, standing and/or walking for about six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday, all with normal breaks. He is further limited to occasionally climbing ramps or stairs, never climbing ladders, ropes, or scaffolds, occasionally balancing, frequently stooping, occasionally kneeling, occasionally crouching, and occasionally crawling. The Claimant is limited to frequent exposure to extreme cold, extreme heat, and hazards. He can understand, carry out, and remember simple instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers, and work situations, deal with routine changes in work setting, maintain concentration[,] persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday.

Tr. 32. The ALJ further concluded at step four that Mr. Romero was not capable of performing his past relevant work. Tr. 37. At step five, the ALJ found that considering Mr. Romero's age, education, work experience, residual functional capacity, and the testimony of a vocational expert (VE), there are jobs that exist in significant numbers in the national economy that

Mr. Romero could perform. Tr. 37-39. The ALJ, therefore, determined that Mr. Romero was not disabled. *Id.*

In his Motion, Mr. Romero argues that (1) the ALJ's assessment of Consultative Psychological Examiner Kenneth C. Kenney, Ph.D., MSW's opinion is meaningfully flawed due to selective reading of the evidence and a failure to develop the record; (2) that the ALJ failed to properly evaluate Consultative Medical Examiner Em Ward, M.D.'s opinion and incorporate his assessed functional limitations into the RFC; (3) that the Appeals Council erred in failing to consider the medical opinion evidence from treating neurologist Elaine Sue Edmonds, M.D.; and (4) that the Appeals Council erred in failing to consider the medical opinion evidence from primary care physician Ravi Bhasker, M.D.

For the reasons discussed below, the Court finds that the Appeals Council erred in failing to consider the treating source medical opinion evidence. As such, this case requires remand.

### A. Consideration of Additional Evidence

#### 1. Neurologist Elaine Sue Edmonds, M.D.

On February 4, 2020, approximately six months after the ALJ's determination, Mr. Romero saw his treating neurologist, Elaine Sue Edmonds, M.D., for follow up for MS.[4] Tr. 8-10. Mr. Romero submitted Dr. Edmonds' February 4, 2020, treatment note to the Appeals Council for consideration. Dr. Edmonds' treatment note describes Mr. Romero's history, current status, and certain limitations related to his MS as follows:

> Patient has had MS for 14 years. He originally had spasms on the left side of his body associated with aura. He was diagnosed as having PCSZ even though several EEGs were negative. He was placed on dilantin which caused his LFTs to be

---

[4] The medical evidence record contains treatment notes generated by Dr. Edmonds beginning on August 5, 2010 through February 4, 2020. Tr. 8-10, 351-52, 357-59, 402-07, 485-88, 490-92, 496-513.

elevated.  He was then placed on Lamictal.  An MRI of the brain showed one lesion which decreased in size on follow-up scans.  After 4 years he developed L optic neuritis.  He saw Dr. Reddy who suggested that he has multiple sclerosis.  This was confirmed by lumbar puncture and a follow-up MRI showed 9 lesions.  He also had numbness of his L arm.  *His recent cervical MRI shows a lesion at C5-C6 which likely was the cause of his L arm numbness.  He still experiences electrical painful spasms of his left arm and leg which recur but last only seconds.  This is likely paroxysmal hemi-dystonia, a symptom commonly associated with multiple sclerosis.*  I suggested a trial of low dose Tegretol.  This is usually very effective in preventing this symptom.  *He currently has Uthoff's phenomenon causing decreased vision in his left eye and numbness of his left arm when he is exposed to heat.  Because of this he is unable to work outside in the summer*.  He stopped his job in 2017.  He went to vocational rehab who suggested that he apply to be a house inspector.  Unfortunately he fell off a ladder injuring his left side.  He has headaches, anxiety and depression and saw a psychologist who considered him to be disabled and diagnosed him with depression and PTSD.  His SSDI case was denied.  He is working with an attorney and is appealing that decision.  He also asked for a congressional inquiry regarding his disability denial.  No response has been received.  Regarding his multiple sclerosis, he has been on Copaxone or generic equivalent since 2006 when he saw Elida Greinel, NP at UNMH.  He was referred to me in 2006 and has continued to see me since then.  *His last cervical MRI was in 2019.  It shows lesions at C5-C6 and C7-T1 as well as degenerative disc disease*.  His last brain MRI was in 2019.  He will schedule a follow-up brain MRI in next month.  He takes vitamin D.  I will order labs for him to obtain in one month if he stays on Tegretol.

He believes that he is unable to work based on his fatigue, balance issues, L numbness and paroxysmal dystonia.  He also has anxiety and depression and has been diagnosed with PTSD.  *He cannot sit for long periods due to back pain and paroxysmal hemidystonia.  He likely has degenerative disc disease of his lumbar spine but no MRI has been performed to my knowledge*.  He is a very honest and reasonable person whom I have known for years.  *Although his exam is relatively normal he has episodic symptoms and fatigue which are not obvious on a neurological exam*.

Tr. 8 (emphasis added).

### 2. Ravi Bhasker, M.D.

On September 24, 2019, seven weeks after the ALJ's unfavorable decision, treating physician Ravi Bhasker, M.D., prepared a *Medical Source Statement: Physical Limitations* on Mr. Romero's behalf.  Tr. 11-15.  Mr. Romero submitted Dr. Bhasker's *Medical Source Statement* to the Appeals Council for its consideration.  Dr. Bhasker stated that he had been

8

treating Mr. Romero for nine months, that Mr. Romero had an MS diagnosis since 2006, and that his prognosis was fair.  Tr. 11.  Dr. Bhasker stated that Mr. Romero had symptoms of fatigue, dizziness, and constant left-sided body pain and weakness.  *Id.*  Dr. Bhasker indicated that Mr. Romero was not a malingerer, that emotional factors contributed to the severity of his symptoms and functional limitations, that depression and anxiety were affecting Mr. Romero's physical condition, and that Mr. Romero's impairments were reasonably consistent with the symptoms and functional limitations Dr. Bhasker described in his evaluation.  Tr. 12.  Dr. Bhasker assessed that Mr. Romero's pain or other symptoms were severe enough to frequently interfere with the attention and concentration needed to perform even simple work tasks, and that Mr. Romero's chronic illness rendered him incapable of performing even "low stress" jobs.  *Id.*  Dr. Bhasker also assessed that Mr. Romero (1) could sit for 20 minutes at one time before needing to get up; (2) could stand for 10 minutes before needing to sit down or walk around; (3) could sit and stand/walk for less than 2 hours in an 8-hour working days; (4) would need a period of walking around every 5 minutes during an 8-hour working day; and (5) would require unscheduled breaks during an 8-hour workday.  Tr. 12-13.  Dr. Bhasker assessed that Mr. Romero could rarely lift and carry 10 lbs.; could rarely twist, stoop, crouch and climb stairs; and could never climb ladders.  Tr. 14.  Dr. Bhasker also assessed that Mr. Romero would miss more than four days per month of work as a result of his impairments or treatment.  *Id.*  Dr. Bhasker explained that limitations from PTSD and fatigue would affect Mr. Romero's ability to work at a regular job on a sustained basis.  *Id.*  Dr. Bhasker stated that the earliest date the limitations he assessed could apply would be 2006, the onset date of Mr. Romero's MS.  Tr. 15

B.   **The Appeals Council Erred in Failing to Consider the Evidence From Mr. Romero's Treating Physicians**

Mr. Romero argues that the Appeals Council erred in failing to consider the treating physician evidence he submitted. Doc. 25 at 23-24. Mr. Romero argues that while the ALJ relies heavily on "generally normal" physical exams to discount Mr. Romero's alleged symptoms of fatigue, Dr. Edmonds' treating note demonstrates that Mr. Romero's fatigue cannot be measured by neurologic exam. *Id.* Mr. Romero also argues that even though Dr. Edmonds' treating note is dated after the ALJ's determination, it nonetheless relates to the relevant period of time because it explains Mr. Romero's longstanding MS diagnosis and the presence of his fatigue and pain despite normal neurological exams. *Id.* As for Dr. Bhasker's assessed limitations, Mr. Romero asserts that had the Appeals Council properly considered Dr. Bhasker's opinion evidence that Mr. Romero would have been found to be disabled. *Id.*

The Commissioner contends that because the Appeals Council denied review of the additional evidence, that the ALJ's decision becomes the final agency decision and that the Court should conduct a substantial evidence review of the ALJ's decision, including the additional evidence, and that the Court should *not* review the Appeals Council's denial of the review. Doc. 27 at 15-16. To that end, the Commissioner asserts that Dr. Edmonds' treatment note does not relate to the relevant period of time and does not qualify as a medical opinion under the regulations, *i.e.,* Dr. Edmonds did not assess specific functional limitations in her treatment note. *Id.* at 16-17. The Commissioner also asserts that Dr. Bhasker's opinion is inconsistent with the record as a whole, and that Dr. Bhasker indicated elsewhere in the record that his opinion was based on nothing more than Mr. Romero's own statements. *Id.* For these reasons, the Commissioner argues that the newly submitted evidence does not undermine the substantial evidence supporting the ALJ's determination.

Under its regulations, the Appeals Council will only review a case if, among other things, it receives additional evidence "that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5).[5] Whether evidence qualifies for consideration by the Appeals Council under this standard is a question of law subject to *de novo* review. *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011). The "general rule of *de novo* review permits [the Court] to resolve the matter and remand if the Appeals Council erroneously rejected the evidence." *Id.* (citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004)). If the evidence does qualify and the Appeals Council erroneously rejected it, the case is remanded to an ALJ for a rehearing with the new evidence. *Id.* "If the evidence does not qualify, the Appeals Council does not consider it and it plays no role in judicial review." *Id.* The Court will refer to this as the "de novo" standard of review.

The standard of review changes significantly, however, if the Appeals Council *did* consider and exhibit the new evidence, but nonetheless determined that substantial evidence supported the ALJ's decision. In such a case, without consideration of the three requirements for qualification, the Court would then perform its *own* substantial-evidence review of the entire record, taking into account the new evidence that neither the ALJ nor the Appeals Council ever analyzed. *Padilla v. Colvin*, 525 F. App'x 710, 712 n.1 (10th Cir. 2013); *Krauser*, 638 F.3d at

---

[5] These regulations were recently amended. *See* Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process, 81 Fed. Reg. 90,987, 2016 WL 7242991 (Dec. 16, 2016) (effective January 17, 2017, with compliance required after May 1, 2017). The amendments added that the Appeals Council will only consider additional evidence if the claimant shows good cause for not informing the ALJ about the new evidence and submitting it to him or her. *Id.* §§ 404.970(a)(5), 416.1470(a)(5). The Commissioner does not argue, however, that Mr. Romero was required to demonstrate "good cause" for not submitting the evidence earlier. Therefore, the Court need not consider whether this standard applies to the present case.

1328; *Vallejo v. Berryhill*, 849 F.3d 951, 956 (10th Cir. 2017).  The Court will refer to this as the "substantial-evidence review" standard.

The Commissioner incorrectly advocates for the "substantial-evidence review" standard. Here, the language of the Appeals Council's order clearly indicates that it did not "exhibit" the additional evidence.[6]  Tr. 2.  As a result, the Court finds that the Appeals Council did not accept the additional evidence into the record.  Moreover, even though the Appeals Council determined that the evidence, as to Dr. Edmonds' treatment note, "does not relate to the period at issue," and, as to Dr. Bhasker's opinion, "does not show a reasonable probability that it would change the outcome of the ALJ's decision," the Appeals Council determines temporal relevance and reasonable probability *before* it decides whether it will "consider" the additional evidence as part of its substantial-evidence review of the ALJ's decision.  Thus, assessing whether temporal relevance or reasonable probability exist are "predicate requirements . . . to warrant consideration" and does not equate to performing the review that the social security regulations contemplate.  *Padilla,* 525 F. App'x at 712.  Therefore, "the Appeals Council's dismissal of the additional evidence's import indicates that it ultimately found the evidence did not qualify for consideration at all."  *Id.*

The Appeals Council's refusal to consider Mr. Romero's additional evidence has implications for this Court on review.  Because the Appeals Council did not consider the additional evidence in conjunction with a review of the entire record, the Court may not consider

---

[6] An "exhibit" is "any evidence upon which a finding and decision are based," whether before an ALJ or the Appeals Council. HALLEX, I-4-2-20, https://www.ssa.gov/OP_Home/hallex/I-04/I-4-2-20.html.  If the Appeals Council had exhibited the evidence, it would appear in the "Medical Records" section at the end of the Administrative Record. Because the Appeals Council did *not* exhibit it, the records were "included in the administrative record" but treated "as procedural documents, similar to the hearing decision or AC denial notice." HALLEX, I-4-2-20. Thus, the additional exhibits are not part of the record of medical evidence before the Court. This indicates that the only question properly before the Court is whether the additional exhibits should be part of the record.

the additional evidence in a review of the denial of benefits "under the deferential substantial-evidence standard." *Chambers,* 389 F.3d at 1143. Instead, the Court is constrained to determine, under *de novo* review, whether the Appeals Council erroneously refused to consider qualifying additional evidence. *See Secatero v. Saul*, 2020 WL 419463, at *5 (D.N.M. Jan. 27, 2020) If so, "the case must be remanded so that the Appeals Council may evaluate the ALJ's decision in light of the completed record." *Id.* In short, the proper inquiry is the one advanced by Mr. Romero, *i.e.,* whether the Appeals Council erred in failing to consider the additional evidence. *See Krauser*, 638 F.3d at 1328.

### 1.     **The Additional Evidence Is New**

Additional evidence is "new" if it is "not duplicative or cumulative." *See Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003). The additional evidence here is not duplicative or cumulative. It is undisputed that Dr. Edmonds' most recent treatment note, in which she noted certain functional limitations related to Mr. Romero's MS, and Dr. Bhasker's evaluation and functional assessment of Mr. Romero's ability to do work-related physical activities were not available to the ALJ at the time he made his decision. Moreover, this is treating source opinion evidence, of which there was none in the record when the ALJ reviewed it and made his determination. Further, the functional limitations both Dr. Edmonds and Dr. Bhasker assessed are more restrictive than the nonexamining State agency medical consultants' assessments that the ALJ found very persuasive and relied upon in forming his RFC.[7] *See Robinson v. Barnhart*,

---

[7] On February 13, 2018, Em Ward, M.D., L.L.C., performed a consultative exam to assess Mr. Romero's ability to perform work-related physical activities. Tr. 450-53. Dr. Ward limited Mr. Romero to "moderate" work in mild temperatures. Tr. 453. The ALJ found his opinion "not persuasive." Tr. 36. On March 13, 2018, nonexamining State agency medical consultant Dennis Pacl, M.D., prepared a Residual Functional Capacity Assessment at the initial level of consideration of Mr. Romero's application and assessed that Mr. Romero was capable of less than a full range of light work. Tr. 100-102. On June 27, 2018, nonexamining State agency medical consultant James Metcalf, M.D., prepared a Residual Functional Capacity Assessment at reconsideration and affirmed Dr. Pacl's assessment. Tr. 121-24. The ALJ found the nonexamining State agency opinions to be "very persuasive." Tr. 35.

13

366 F.3d 1078, 1084 (10th Cir. 2004) (finding that the treating physician's opinion is given particular weight because of his/her unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations).  As such, the evidence is not duplicative or cumulative.

## 2.   The Additional Evidence Is Chronologically Pertinent

The additional evidence relates to the period at issue.  While it is correct that both Dr. Edmonds' treatment note and Dr. Bhasker's evaluation and functional assessment were generated after the ALJ's determination, it is equally true that the additional materials made reference to time period adjudicated.  *See* HALLEX I-3-3-6(B) (noting that there are circumstances when evidence dated after the ALJ decision relates to the period at issue, such as when a statement makes a direct reference to the time period adjudicated).  Dr. Edmonds noted that Mr. Romero had L optic neuritis and L arm numbness related to his MS since as early as 2010, and Dr. Edmonds' treatment notes that pre-date the ALJ's determination indicate similar symptoms of fatigue, left-sided numbness, back and leg pain, spasticity and paroxysmal hemidystonia during the relevant period of time.  Tr. 402-06, 485-88, 490-92, 507.  Dr. Bhasker noted in his evaluation that the "earliest date" that his assessed limitations applied was 2006 and that he began treating Mr. Romero for MS-related symptoms nine months earlier during the relevant period of time.  Tr. 15.  Therefore, the Court finds the additional evidence relates to the period at issue.  Additionally, this treating physician medical opinion evidence addresses the physical impairments that were clearly before the ALJ and accepted by him; *i.e.,* multiple sclerosis and degenerative arthritis.  Tr. 29.  The Court, therefore, finds the evidence from Mr. Romero's treating physicians to be chronologically pertinent.

### 3.     The Additional Evidence Is Material

Finally, the evidence is material because both Dr. Bhasker and Dr. Edmonds are treating physicians.  Here, there was no treating physician opinion evidence in the record the ALJ considered and the ALJ relied on the *nonexamining* State agency medical consultants to determine that Mr. Romero could perform less than a full range of light work.[8]  *See Robinson*, 366 F.3d at 1084.  Given Dr. Edmonds' longitudinal perspective of Mr. Romero's MS and her assessment of certain limitations, and Dr. Bhasker's assessed functional limitations of Mr. Romero's ability to do work-related physical activities based on his MS and related symptoms, this material has a reasonable probability of changing the outcome of the case.

For all of the foregoing reasons, the Court finds that the Appeals Council failed to consider the additional evidence Mr. Romero submitted.  *See Krauser*, 638 F.3d at 1328.  This case, therefore, requires remand.

### C.     Remaining Issues

Having determined pursuant to its *de novo* review that the Appeals Council erroneously refused to consider qualifying additional evidence, the Court does not address Mr. Romero's remaining claims of error.

---

[8] *See* fn. 7, *supra.*

## IV. Conclusion

For the reasons stated above, the Court finds Mr. Romero's Motion to Reverse and/or Remand (Doc. 25) is well taken and is **GRANTED.**

_____
**JOHN F. ROBBENHAAR
United States Magistrate Judge
Presiding by Consent**